Move to the next case on the argument calendar, which is IV Solutions, Inc. v. Pacificare Life & Health Insurance Company. May it please the Court? Yeah, one second. Oh, I'm sorry. Okay. Whenever you're ready. So there's some overlap, but I'm really going to be focusing on some different issues. I really do think this is a markedly different case in a lot of ways. What I'm going to be focusing on in this case is was there an unequivocal denial, because I think the trial judge in this case adopted what I believe is the appropriate response, which is it has to be a reasonable time, but I'm looking for an unequivocal denial. That's how Judge Otero ultimately reconciled this. And secondly, this whole issue about whether or not there was a genuine factual issue with respect to whether IVS qualifies as a third-party beneficiary. It's tied into the motion to amend, but I'll address that as well. I do want to start – I meant to start the other argument. I start this one with the same thing, which is I want to state the obvious. These are all legitimate defenses to these cases. I mean, obviously statute of limitations. These are all factual issues. By no means am I suggesting that the insurance companies lose these statutes. The only issue here is whether or not in both cases it was simply completely implausible or impossible to establish that the statute of limitations had not begun to run. Now, in this case, Judge Otero relied on the EOBs as being an unequivocal denial. He equated it with the Vishnodev case, and I think that this case is completely distinguishable in a number of important respects. First of all, the EOBs themselves, it's a fine point. It's not saying, well, we're denying, but if you want to give more information, you can. It's actually inviting you to review this. It's saying, please review this because we're asking for – the exact language is the charge is more than the maximum allowable charge or usual and customary amount payable for the plan. Please review the procedure codes and notify us of any unusual treatments. That's an excerpt of Record 908. So it's a little more – it's nuanced, but it's more than just an invitation to say, well, if you're unhappy, let us know. But more than that, I believe that we have in this case, unlike Vishnodev, we have a trial court that looked at these – at the motion to dismiss, the exact same EOBs. It wasn't just the 185, it was all of them, and said, here the EOBs do not indicate Pacificare was unequivocally denying IBS claims for reimbursement and even invite IBS to submit additional information clarifying the services and or charges. I'm not arguing law of the case, but what I am arguing is that if the standard is that this language was simply impossible to read in any other way other than the way the district court read it at the summary judgment, I think the proof is that when the district court looked at it at the motions to dismiss, he reached a different conclusion with respect to the same EOBs. And even if this court believes that the reading at the MSJ was the better reading or the stronger reading, the point is at a motion for summary judgment, the question is, is there any other interpretation that was – that a trier of fact could have found presented with those facts? And here we have Judge Otero reaching a different result. And not only that, this was a situation where this wasn't a pro forma request for more information. Recall in the record in this case they were paying at this TRPN rate. We have evidence of them doing it. And when they're inviting more information from IBS's perspective, they're legitimate questions, and that's what they were clarifying in the subsequent communications. But the other reason why this is so distinguishable from Vishnadev and why we think the EOBs standing alone are not in unequivocal denial is in Vishnadev the court only had the EOBs, and here we have the subsequent statements by Pacific Air. Those are totally absent in Vishnadev, and I believe that they are relevant to the issue of unequivocal denial, not just an estoppel argument. First of all, the court itself, again, the trial court in the motion to dismiss, in this case, found it relevant, found that language relevant, the subsequent communications, and relied on it in denying the motion. What I think this is really akin to is I think one would have to concede that the EOBs, at the very least, are reasonably susceptible to whether it's a complete unequivocal denial or just an initial payment with an invitation to do more. I think it's analogous to how one interprets an ambiguous contract. If you assume that the EOBs are ambiguous on whether it's equivocal or unequivocal, as a trial lawyer, what I find always most compelling is how do the parties treat this before there was a dispute? Look at what they did. There's no lawsuit. They're writing all these communications, and here they go from August of 2012 through October of 2012. I mean, not just saying we're looking at it. They're actually telling you we've made a mistake, we didn't bill it at the right price, we're going to make corrections, we're processing, they're still pending, routed for adjustment. I mean, the remark code for the denials is this 010 code, right, that you were reading from. Yes. And there are other codes that aren't used that say things like we are unable to determine benefits until we receive additional information. I mean, this charge is more than the maximum allowable charge or usual and customary amount payable by the plan seems to me to be pretty direct and final. Your Honor, I think that I'm prepared to concede that it's ambiguous. In other words, I think that it's a legitimate conclusion. If this were after the trial and a trier of fact had determined after hearing all of the other circumstances, yes, they could look at that language that way. But I think that one can't ignore both the trial court's own view of the EOBs on the first read, exact same EOBs that to me indicate that it's at least susceptible to two different interpretations. But I do believe that these post-EOB communications are extremely relevant to say what did the parties, how did the parties themselves view it. And I think the best illustration is you compare all that language that was in the e-mails and communications and transcripts. And by the way, contrary to what's indicated in the other side's briefs, these do relate with one exception to all the claims, not just the 185. All those communications are for all the claims. But then you compare it, Your Honor, look at what if one wants to see an unequivocal denial, based on our review we've determined that the claims were processed correctly according to CM's insurance policy, therefore no additional benefits are available. Sometimes by looking at what is the obvious, it's the best way of illustrating the earlier, you know, what the earlier information was. So I would concede to Your Honor that if you had nothing else, just those EOBs, perhaps one could reach a different conclusion. But I think when you look at all the circumstances and look at the subsequent communications, where they're telling you we are reprocessing, which is a term of art, and we have an expert testimony on what that term meant presented to Judge Otero, I think that that contributes to the issue of whether or not there was a proper finding of an unequivocal denial. On the third-party beneficiary, I mean, procedurally this was a little confusing, to say the least, but outlined for the reasons outlined in the motion to amend primarily. But essentially it was discovered during the course of discovery that it was the wrong contract. So, counsel, here's what I don't understand, and I'm going to have some questions on this for opposing counsel. Counsel, you say in your briefs you didn't have what is referred to in the briefs as the 2010 contract. The multi-plan 10, that's correct. But an unredacted version of that contract, which I've read, was filed in the 2017 case on July 26, 2017, and it was served on the lawyers in that case for your client. So the ‑‑ I apologize, and I'm not sure if ‑‑ I don't want to ‑‑ I don't think this is in the record. I was not the attorney in that all. No, I understand. I understand you're not the attorney, but your brief says your client didn't have it. No, more than that, there was ‑‑ I think I can state, because it's public record, that there was a confidentiality order in that case. I did not have that 2010 agreement. But you didn't say that to the district court here. I mean, when you attached whatever that Exhibit 12, the redacted version, you didn't say, there, I don't have the unredacted version, there's a confidentiality agreement, I can't use the contract from the 2017 case in this case unless somebody goes to the other case and asks the court for permission. So, I mean, why wasn't any of that done here, especially given the fact that it was filed in July of 2017? I'm going to ‑‑ well, I'm going to agree that I could have put more in the motion to amend as to my efforts to get the contract from other counsel and whether or not they felt they were allowed to do it. Recall, I didn't know the contents of the 2010 document until three weeks after the opposition was filed when in the other case, the UHC, it was the other UHC case where the court issued its opinion. But the reality ‑‑ but this is getting ‑‑ I don't think there's any serious dispute that we didn't have it. I didn't have it. I guess one can challenge, well, could we have made a motion to amend earlier because the client could have gotten it? Because the redacted version you filed in this case doesn't have any of the language in it that suggests that you are a third party beneficiary. All I was ‑‑ the only reason I was attaching it was to reflect the fact this ‑‑ you're relying on the wrong agreement. We know the dates of service were after 2010, and I had the agreement and the date. So I wanted at least Judge Otero to understand that the whole argument that they're basing their argument on, which is frankly ‑‑ I mean, it's either you should be relying on the contract that we wanted to rely on, which was in our proposed second amended complaint, or the original contract, which is the TRPN contract, which we did have and which was part of the ‑‑ But you said in your pleadings that the relevant contract was the concentric contract, right, in the summary judgment pleadings? We said that the 2010 multi‑plan, the concentric is the 2007 agreement. No, I understand that, but you have various pleadings with regard to summary judgment, which you say you're relying on the concentric agreement. What we said is, faced with what we're dealing with, because we don't have the original agreement, I did address arguments about the 2007 agreement, but we did not concede. The motion ‑‑ the proposed second amended complaint identified the date of the multi‑plan agreement as being January 2010. I'm looking, for example, at the opposition to the defendant's motion in limine, where you say plaintiff intends to submit evidence that defendant paid 95%, which is consistent with defendant's obligation under the agreement between defendant and third party concentra on which defendant's obligations are based. That's in the opposition to a motion in limine? Yes. Okay. Your Honor, the timing of all of this occurring, I unfortunately don't have the date of the opposition to the motion. I think it's October 2, 2017. Okay. At that point, that's the only agreement that we were allowed to rely on, because the amendment, the motion to amend, had been denied. This is all ‑‑ it comes down on July ‑‑ basically, I'm about to take TRPN's deposition. They say we don't have a contract, which leads me to then investigate. And by the way, remember that the bills here from Pacificare reflected that they were paying in accordance with TRPN. So it wasn't like this was out of, you know, completely from left field. We assumed that it was a TRPN relationship. We're about to take the deposition of the TRPN most knowledgeable person. We find they don't have a contract. And by the way, with respect to the prejudice, and, you know, I appreciate the professional courtesy, there was a stipulation to continue just for purposes of getting to the bottom of this. I'd like to reserve a couple of minutes if that's okay. Okay. Thank you. Very good. Let's hear from counsel for the defendant. Thank you. Good morning, Your Honor. May it please the court. Emily Kuwahara for Appalachia Pacific Life and Health Insurance Company with me at counsel table. I have Dan Glassman, who is one of the trial attorneys in this particular case. I'd like to address a couple of points made by my opposing counsel here. On the issue of the statute of limitations, we agree with the court that the language in the EOBs for which the district court did find the statute of limitations had run were very clear. It wasn't just the language. It came with a check. These provide the charges. These provide what was paid. It said it was more than the usual customary amount, and it came with a check. It's unequivocal as it gets. For that reason, we ask the court to affirm the district court on the statute of limitations issue. We think it's a really clear cut on that issue. With respect to the argument as to the motion to dismiss versus the motion for summary judgment, the court's differing opinion on that. As we've seen here today, an opinion on a motion to dismiss is just not the same as an order on a motion for summary judgment. Counsel, I'd like you to explain to me why the 2010 contract, which I've read from the file in the 2017 case, isn't the applicable contract here. I've read your declarations in the district court, which don't actually say explicitly the concentric contract is the applicable contract. They say that the payments were processed under the concentric contract. So I've read the 2010 contract, and I'd like you to tell me why, in fact, that isn't the applicable agreement for claims that were made after the effective date of that contract. Yes, Your Honor. There are two points. The first, which I will circle back to, is that here, for purposes of argument, we need to identify the right contract to which IVS is claiming to be a third-party beneficiary. But, in fact, Pacific Air never accessed the concentric agreement. So whether it's the 2007 agreement or the 2010 agreement, it's a little irrelevant, and I'd like to walk the court through that. Okay, and you're going to have that opportunity, but my question is I want you to explain to me why the 2010 contract between United and Multiplan isn't the contract that would govern claims that were submitted by the plaintiff after that date. Yes, Your Honor. So the factual reason is actually a little outside the record, because Concentra was acquired by Multiplan, as we have stated. So for a while, there were actually two contracts in force, and for this case, for these claims, the Pacific Air Concentra agreement is the one that applies the TRPN claims. And here, in the summary judgment papers, as the court has pointed out, IV Solutions has conceded that for the purposes of summary judgment, it's the right contract. So, again, counsel, I've read the summary judgment papers, and I've read the Concentra contract, and I've read from the 2017 case the unredacted version of the 2010 contract, and my question is for you to tell me, as an officer of the court, why that isn't the applicable contract for claims that were submitted after the effective date by this plaintiff. Yes, Your Honor. Again, there were two contracts in force at the same time, and it's because Concentra was later acquired by Multiplan, that we ended up in a situation where there's two contracts that appear to be with Multiplan. For this case, with the TRPN network, the Concentra agreement is the one under which these claims would have been processed. I don't know if I've clarified that at all. No, but why don't you go ahead with your argument. Sorry, Your Honor. The thing that I want to clarify with the contracts is that IVS is claiming a breach of contract claim. In order to do that, it needs to identify a contract between itself and Pacific Air, and there is none. So it's turning now to contracts between Pacific Air and third parties to claim that it's a third-party beneficiary. I just want to clarify how the contracts here work. The first contract that really matters is actually the contract between Pacific Air and its member, which is the health plan. Under this contract, Pacific Air is required to reimburse out-of-network providers under whatever the terms of the health plan. So under the health plan here, different health plans have different terms. Pacific Air has to pay the lesser of the bill charges or the usual customary charges, and there are two other categories that don't apply here. So then you turn to the contract between Pacific Air and Concentra, and under this contract, Concentra provides Pacific Air access to discounted rates for out-of-network providers. So if a provider is part of Concentra's list of providers for which it can provide discounts, Pacific Air can choose to access those rates. Here's the key point, and this is what also Judge Otero looked at, is that Pacific Air is not required to access this discount. Going back to the health plan, which is what really governs this whole relationship, Pacific Air has to pay the lesser of the bill charges or the usual and customary charges. In the Concentra agreement, the language in the Concentra agreement is consistent with this, in that it states that if Pacific Air determines that the claim is not payable in full or in part, it's not eligible for services, United reserves the right at its full discretion to finalize the adjudication of such claim as it deems appropriate. And so here we have a situation that's exactly what happened here. Pacific Air reviewed the charges. It did not access IVS's rates under the Concentra agreement. You can see from the EOB it clearly states that it was paid under the usual and customary rates. In fact, in summary judgment, IV Solutions doesn't contest that that's what happened. It just simply says, no, we're owed 95%. It doesn't actually contest that the usual and customary rates were what was charged. So in this situation, in some ways, whether it was the 2007 Concentra agreement, which was in force, or the 2010 multi-plan agreement, which they point to, which deals with different plans and different members, it's a little irrelevant. Because you're saying under either agreement your client didn't breach? Is that your argument? Well, yes, that is one argument. Yes, that is one argument. The other argument is that Pacific Air never accessed the rates under the Concentra agreement, and it wouldn't have accessed the rates under the 2010 agreement, a multi-plan agreement, either. What it did was it said it looked at it instead it paid the usual and customary charge, because you go back to the health plan. And Pacific Air has to pay the lesser of the bill charges or the usual charges. But their argument, and I don't want to quote from the 2010 contract, which isn't in the record, although in the 2017 case the court quoted from it, their argument is that they're a third-party beneficiary under that contract, and as a third-party beneficiary they're entitled to payment under that contract. And if I'm remembering correctly, the district court's reason for granting summary judgment as to claim 185 was that they weren't a third-party beneficiary under the contract they were claiming under. I believe the district court looked at the Concentra agreement. Yes. Yes. Because basically your representations essentially were that the Concentra agreement was the governing agreement. And I agree with you that they conceded that, but wanted to make an argument that it was the 2010 contract, and the district court said, well, if that's the agreement, the statute of limitations, even though it hadn't run, they can't make a claim because they weren't a third-party beneficiary, right? Correct, Your Honor. But I think they would have a strong argument under the 2010 contract if that were applicable that they were a third-party beneficiary. Well, I do not have the 2010 agreement is not in the record. It's not in the record. Yes, and as you know, Judge Fitzgerald quotes it in his order, and that's all we have. Unfortunately, we do not have it. But even under that contract, Pacificare has the ability to elect to, according to the language in Judge Fitzgerald's order, which is, again, a motion to dismiss and not on summary judgment, and I just want to make that very clear, that Pacificare does have the ability to elect whether or not to access the rates. And here we know from on summary judgment on the record that Pacificare did not, in fact, access those rates. It paid under the usual and customary charge, which is what it was required to do under the health plan, Your Honor. And so whether the 2010 agreement applies or whether the 2007 agreement applies, either way, Your Honor, they do not have standing to bring a breach of contract claim in this case on these facts, Your Honor. And the fact that there is a 2010 agreement out there does not create a factual dispute here where Ivy Solutions has not pointed to any facts that would negate that the concentra agreement is the one under which they needed to argue that they were a third-party beneficiary. And, again, it also does not negate their concession in their papers, Your Honor. So in terms of the contract claim, the third-party beneficiary claim, Pacificare's position is that the concentra agreement was never accessed, and so they do not have standing. The alternative way to look at that is that Pacificare never breached the agreement, and that is both on the basis of the fact that they didn't access it, and alternatively, on the basis that they did pay the reasonable and customary charges. And the district court didn't rule on that, but the court has the power to affirm on that basis as well. There's no challenge to the fact that the reasonable and customary charges were, in fact, paid in this case. And so we'd ask the court to affirm on any of those grounds, as it is de novo review. You know, if you have no more questions, then I. . . Okay. All right. Thank you very much, Your Honor. Thank you very much for your argument. We've got some time, once again, for rebuttal. I've got two minutes. Thank you, Your Honor. There's a repeated refrain that we did not access the multi-plan agreement. What is reflected in the motion to amend, and what I discovered at the time I spoke, is that there was a TRPN multi-plan contract. So if the insurance company has a contract with multi-plan, multi-plan had a contract with TRPN, where it would say, here, you take these claims because you have a better deal with this particular provider. You process it, and we'll share in the fees. That's what's reflected in the motion to amend. That's what I discovered, so that when the EOBs came back and said this was a TRPN payment, TRPN was processing it, but it was pursuant to TRPN's contract with multi-plan, and I discovered that it was multi-plan's contract with the insurance company that was then relevant to me, which was quoted by the court in the 2017 ruling, and specifically expressly has third-party beneficiary language in there about obligating to pay. Moreover, the second amended, proposed second amended complaint added an additional theory because in the, I'm sorry about all these different contracts, but the multi-plan IVS contract, multi-plan actually made an express representation that the insurance company would pay, and there was an agency theory that was being asserted in the second amended complaint. So, and there was no concession. I appreciate the court's comments with the motion eliminated, but we raised in the opposition to Judge Otero, it's in the footnote, we said this is not the appropriate contract, and it's not the one we're relying on. But, you know, this is what they're bringing their motion on. I responded to it, and we didn't, we were not able to argue anything else on that with respect to that. I think that's it. I really just wanted to explain we did access, there was no determination by the court. This wasn't based on, oh, you never, it's sort of like optional language as to whether you're going to access or not. Our position is that once you access with a patient through TRPN or a multi-plan, that's the process you're supposed to use. But the court never addressed the issue what happens if you change your mind, you know, later down the road. That wasn't the basis of the motion. And finally, this language about, and I may be wrong, it sounds like Your Honor has read these contracts more carefully, but I don't think that the language that they rely on as far as bailing out, if they choose not, I think that's only in the 2007 agreement. I did not see it in the 2010 agreement. Okay. Thank you very much. Thank you, counsel. The case just argued is submitted.
judges: Watford, Rakoff, Bennett